UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | Civil No. 1:08-cv-02447 |
| | * | |
| Plaintiff-Respondent, | * | (Criminal No. 1:06-cr-00484) |
| | * | |
| v. | * | Honorable Judge William J. Hibbler |
| | * | |
| VINCENT JOHN TENUTO, | * | |
| | * | |
| Defendant-Petitioner. | * | |

**MEMORANDUM OF LAW IN SUPPORT OF
THE MOTION UNDER 28 U.S.C. § 2255**

**I.    Introduction**

Defendant-Petitioner Vincent John Tenuto, now through counsel, has moved this Honorable Court under 28 U.S.C. § 2255 to reinstate his appellate rights, based upon a violation of his Sixth Amendment rights to effective assistance of counsel and a complete denial of his right to an appeal.

Mr. Tenuto was first deprived of his right to effective assistance of counsel when he expressly informed his counsel for his desire to appeal the sentence, and when his former attorney responded by (1) failing to file a notice of appeal and, (2) suggested that Mr. Tenuto hire other counsel for an appeal, making that suggestion beyond the time by which Mr. Tenuto and his family could have hired new counsel.  To remedy the error, Mr. Tentuo asks that the district court to enter an amended judgment order to allow him to timely file a notice of appeal.

**II.     Statement of the Case**

In August 2006, a Grand Jury for the Northern District of Illinois, Chicago Division, returned a criminal indictment against Mr. Tenuto. The indictment charged him in counts one and two with transporting and shipping in interstate commerce an image of child pornography, namely a computer image attached to an email, in violation of 18 U.S.C. § 2252A(a)(1). The indictment also charged him in count three with knowingly receiving an image of child pornography, which had been mailed, shipped, and transported in interstate and foreign commerce, in violation of 18 U.S.C. § 2252A(a)(2)(A).

At this time, attorney John Bickley represented Mr. Tenuto. At the time of his arrest, Mr. Tenuto had immediately cooperated and even assisted law enforcement with the investigation into his own case. Thus, Mr. Tenuto already understood why it was important for him to plead guilty and to do so timely. In large part because Mr. Tenuto understood the wrongfulness of the conduct and accepted responsibility, Mr. Tenuto agreed to enter into plea negotiations with the government. Mr. Tenuto believed from his conversations with law enforcement and Mr. Bickley that it was likely that pleading guilty would mean a sentence of probation. See District Court Docket in Case No. 1:08-cv-02447 Document Number ("Civ.Doc.") 3, at pages 1-3, Affidavit of Vincent John Tenuto ("Vincent Tenuto Affidavit"), at ¶ 3.

In January 2007, Mr. Tenuto entered into a plea agreement in which he agreed to plead guilty to count one in exchange for the government's dismissal of the remaining counts. Under the terms of the plea agreement, Mr. Tenuto admitted that in September 2005, he knowingly transported and shipped interstate commerce, by means of a computer, an image of child pornography depicting females under the age of 12, namely a computer image attached to an e-

mail sent to someone with the screen name "Sprty83," in violation of 18 U.S.C. § 2252A(a)(1). Mr. Tenuto also stipulated that certain facts constituted relevant conduct for purposes of calculations under the sentencing guidelines. This included that he knowingly possessed a computer that contained approximately 1,200 images of child pornography which had been transported interstate by use of a computer; that he used his computer to send and received images of child pornography, with some of those images depicting violence and sadistic or masochistic conduct.

  The government and Mr. Tenuto also stipulated to certain calculations of the Guidelines. First, the parties agreed the base offense level would be 22, under U.S.S.G. § 2G2.2(a)(2). Second, the parties agreed that under U.S.S.G. § 2G2.2(b)(2) the offense level would be increased by two, as the materials depicted a minor under the age of 12 years. Third, the parties stipulated that the offense level would be increased by four levels since the offense conduct and relevant conduct involved materials depicting violence, under U.S.S.G. § 2G2.2(b)(4). Fourth, the parties agreed the offense level would be increased by five, as the offense and relevant conduct involved 600 or more images, under U.S.S.G. § 2G2.2(b)(7)(D). Fifth, the parties agreed Mr. Tenuto had timely demonstrated acceptance of responsibility, entitling him to a full three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a). This meant the parties were stipulating to a total offense level of 30.

  The plea agreement noted two issues that the parties did not agree upon. The writing noted the government submitted that Mr. Tenuto's offense level should be increased by an additional two levels under U.S.S.G. § 2G2.2(b)(3)(F), as the offense involved distribution, and that the offense level should be increased by another two levels under U.S.S.G. § 2G2.2(b)(6), as

a computer was used for the possession and receipt of the materials. Mr. Tenuto reserved the right to challenge these requests for additional enhancements.

On January 10, 2007, Mr. Tenuto appeared in the district court and pleaded guilty under the terms of the written plea agreement. The district court accepted the guilty plea, set the matter for sentencing, and order the probation office to prepare a presentence investigation report.

The presentence report initially followed the terms of the plea agreement, recommending base offense level of 22, and then adding and subtracting levels based upon the stipulations of the parties. But the report also added additional two levels under U.S.S.G. § 2G2.2(b)(3)(F), as the offense involved distribution, and that the offense level should be increased by another two levels under U.S.S.G. § 2G2.2(b)(6), for a total offense level of 34. The report found no criminal history points, placing Mr. Tenuto in a criminal history category of I and resulting in a Guidelines range of 151 and 188 months.

Soon after Mr. Tenuto pleaded guilty, Mr. Bickley passed away. The family hired attorney John D. Donlevy to take over as counsel for sentencing. Discussions with Mr. Donlevy led Mr. Tenuto to continue to believe that probation was the likely sentence in the case. See Vincent Tenuto Affidavit, at ¶ 3.

Through Mr. Donlevy, Mr. Tenuto filed position paper concerning sentencing factors and his request for a sentence of probation. He noted that he was 38 years old, that he had a previously unblemished record, that he had been in the printing business nearly his entire life, and that he was an excellent father to his two children. It was noted that the offense conduct occurred following a divorce and during a period of time in which he had become very

depressed.  He also noted that he had never attempted to make contact with or contacted any minor children.  Mr. Tenuto pointed to his cooperation with police, which included not only a immediate full and truthful disclosure, but also allowing police to use his screen name for their ongoing investigation.  He noted that he had been hospitalized for depression and received psychiatric care and counseling since his first contact with law enforcement.   He argued that he was a strong candidate for probation, given that a lengthy period of incarceration would be counter-productive, and could subject him to mistreatment due to the nature of the charges.

Also through Mr. Donlevy, Mr. Tenuto also filed objections to the presentence report.  He submitted that four levels of enhancement were improper.  First with regard to the two-level increase for "distribution," he argued that the application of such an adjustment constituted double counting, since the charged offense was for "distribution" through shipping and transporting, and the applicable guideline offense level of 22 already took distribution into consideration, since a mere possession violation would have only subjected him to a base offense level of 18.  As to the two-level increase based upon "use of a computer," because he was charged under 18 U.S.C. § 2252A(a)(1), the use of the computer was also already factored in the application of the base offense level of 22.

The district court held a sentencing hearing in May 2007.  Entering the sentencing hearing, although Mr. Tenuto knew that neither Mr. Bickley nor Mr. Donlevy has promised that he would receive a sentence of probation, Mr. Tenuto had come to believe based upon those attorneys' statements that probation was a likely sentence.  See Vincent Tenuto Affidavit, at ¶ 3.

As to Mr. Tenuto's objection concerning double counting for "distribution," the district court observed that "there are many ways that there could be distribution" and those methods are

5

"minor compared to the ability to distribute over the Internet." Thus, the district court overruled the objection and imposed the two-level increase. As to Mr. Tenuto's objection concerning double counting for "use of a computer," the district court reasoned that the base offense level had not taken into consideration the use of a computer so that no fact was counted twice. Thus, the district court overruled that objection as well, and also imposed this two-level increase, reaching the presentence report's total offense level of 34 and the Guidelines range of 151 to 188 months.

The district court then heard arguments regarding the appropriate sentence to impose. The government requested a sentence within the Guidelines range and noted that the circumstances might justify a sentence at the low end of that range. Mr. Donlevy argued that the Guidelines did "not properly address the particular circumstances of this case," arguing that Mr. Tenuto was eligible for probation under 18 U.S.C. § 356(1)(a)(1) and that probation was the appropriate sentence. Mr. Donlevy cited Mr. Tenuto's supportive family, reliable employment, and that he had received psychiatric care and medication to address his conduct. Mr. Donlevy also reviewed Mr. Tenuto's immediate cooperation with law enforcement.

The district court concluded that probation was not appropriate. Although concluding that the Guidelines sentence range was "draconian to some extent," the district court determined that it was "not going to make an extensive departure from" the Guidelines range. The district court then imposed a sentence of 96 months imprisonment, citing to "the nature of the offense and background of Mr. Tenuto, his lack of criminal history being the primary reason, the fact that he did undergo certain personal difficulties shortly before he began on this conduct."

After the sentencing hearing and because of the sentence of 96 months, Mr. Tenuto and his family were surprised and concerned. As described more fully in the argument sections that follow, Mr. Tenuto spoke to his family about how he wanted to appeal, and his father approached Mr. Donlevy about appealing the sentence. Mr. Tenuto later called Mr. Donlevy and discussed the appeal. Although Mr. Donlevy remained Mr. Tenuto's attorney, he did not file a notice of appeal and, instead, in a letter dated four days before the notice of appeal was due, recommended that Mr. Tenuto hire a new attorney for the appeal.

The district court entered it judgment order on May 2, 2007.

Mr. Tenuto has taken no action since the judgment order save for the pro se motion under 28 U.S.C. § 2255 filed on April 28, 2008. Mr. Tenuto's family has now retained the undersigned counsel, and this memorandum of law is now filed in support of the pro se § 2255 motion.

**III.    Mr. Tenuto's Right to Appeal must be Reinstated, as his Trial Counsel Failed to File a Timely Notice of Appeal Despite Mr. Tenuto's Expressed Desire to Appeal, Completely Depriving Mr. Tenuto of his Right to Counsel and his Right to Appeal.**

   **A.    Standards of review and case law concerning defense counsel's failure to file a notice of appeal.**

The Sixth Amendment to the U.S. Constitution guarantees that criminal defendants are entitled to the assistance of counsel in presenting their defense. "The right to counsel is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process." Kimmelman v. Morrison, 477 U.S. 365, 374 (1986). Furthermore, the U.S. Supreme Court has recognized that "the right to counsel is the right to effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 (1970); Jones v. Page, 76 F.3d 831 (7th Cir. 1996). The right to effective assistance of counsel at any critical stage encompasses the right to have an advocate for one's cause. Avery v. Alabama, 308 U.S. 444, 446, 60 S. Ct. 321, 322 (1940). Counsel must "subject the prosecution's case to meaningful adversarial testing." United States v. Cronic, 466 U.S. 648, 659, 104 S.Ct. 2039, 2047 (1984).

To succeed on a claim of ineffective assistance of counsel, a defendant must show that his "counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2055, 2063 (1984). The Strickland Court went on to hold that in order for a defendant to prevail on an ineffective assistance of counsel claim, he must satisfy a two-prong test. Id. A defendant should demonstrate that the representation he received "fell below an objective standard of reasonableness" and "a reasonable probability that but for counsel's

unprofessional errors, the results of the proceedings would have been different." Strickland, 466 U.S. at 688, 694; Eddmonds v. Parker, 93 F.3d 1307, 1313 (7th Cir. 1996).

A defendant in a criminal case has a Sixth Amendment right to the effective assistance of counsel on direct appeal. Evitts v. Lucey, 469 U.S. 387, 406, 105 S.Ct. 830 (1985). The current state of "federal law has made an appeal from a District Court's judgment of conviction in a criminal case what is, in effect, a matter of right." Coppedge v. United States, 369 U.S. 438, 441 (1962). It is the defendant, not the attorney, who has ultimate authority to make the fundamental decision whether to take an appeal. Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308 (1983). The High Court recently held that a portion of the time-honored test under Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2055 (1984), applies to claims of a lack of appellate counsel. Roe v. Flores-Ortega, 528 U.S. 470, 476-77 (2000).

The Flores-Ortega Court found that even where a defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, the attorney could nevertheless be found to have provided deficient performance based on the facts of the case. Flores-Ortega, 528 U.S. at 478. Counsel's failure to do take an appeal cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes. Flores-Ortega, 528 U.S. at 476-77.

"It is now generally accepted that counsel's failure to file a notice of appeal, either when expressly requested to do so by the client or merely when the client has not consented to the failure, constitutes ineffective assistance of counsel." Chance v. United States, 103 F.3d 128 (6th Cir.1996), citing United States v. Peak, 992 F.2d 39, 42 (4th Cir. 1993); Perez v. Wainwright, 640 F.2d 596 (5th Cir. 1981); United States v. Stearns, 68 F.3d 328, 330 (9th Cir. 1995); Estes v.

United States, 883 F.2d 645, 648-49 (8th Cir.1989).  "Such a failure is considered to be prejudicial *per se* and the defendant is not required to show that a direct appeal would have been successful, or even to suggest what issues may have been omitted on direct appeal." Chance, 103 F.3d 128, citing United States v. Guerra, 94 F.3d 989, 994 (5th Cir.1996); Castellanos v. United States, 26 F.3d 717, 718 (7th Cir.1994) ("If the defendant told the lawyer to appeal, and the lawyer dropped the ball, then the defendant has been deprived, not of effective assistance of counsel, but of any assistance of counsel on appeal.").

 The Supreme Court has observed that "the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to" take an appeal.  Jones v. Barnes, 463 U.S. 745, 751 (1983).  The pertinent American Bar Association standards, which are "guides to determining what is reasonable," Strickland, 466 U.S. at 688, state that "[w]hile counsel should do what is needed to inform and advise his client, the decision whether to appeal * * * must be the defendant's own choice." ABA Standards for Criminal Justice, Standard 21-2.2(b) (2d ed. 1980).

 Only the Seventh Circuit may permit defense counsel to withdraw after judgment in the district court has been entered. United States v. Flowers, 789 F.2d 569, 570 (7th Cir. 1986) (per curiam).  "Trial counsel in a criminal case, whether retained or appointed by the district court, is responsible for the continued representation of the client desiring to appeal unless specifically relieved by the court of appeals upon a motion to withdraw."  Seventh Circuit Rule 51(a).  See Flowers, 789 F.2d at 570 n.1 (quoting then-Circuit Rule 2(c), which contained same text).

 The policy informing that rule is the Seventh Circuit's "responsibility of ensuring that trial counsel perfects a defendant's appeal." Flowers, 789 F.2d at 570 n.1.  The reasoning was

that the Seventh Circuit had "seen too many examples of criminal defense attorneys wanting to bail out on appeal while leaving their clients in the lurch." Id. at 570.

The rule references a "client desiring to appeal." But "the decision whether to appeal is not final until the time to perfect an appeal has expired." Herrera Corral v. United States, 498 F.3d 470, 474 (7th Cir. 2007), citing Flowers, 789 F.2d at 570. "Between entry of judgment and the close of the appeal window, counsel must not be allowed to withdraw precisely because a client who initially decides not to appeal might change his mind, and" as was seen in the Herrera Corral case, "the consequences of the lawyer simply walking off can be too high." Herrera Corral, 498 F.3d at 474.

A defendant who "makes no real effort to inform counsel is not entitled to relief." Id. And an attorney is not required to adjust his or her schedule in anticipation of a client's desire to appeal. Id. But "an attorney should remain available to a client during the relevant ten-day period." Id. "[W]hen a criminal defendant has made reasonable efforts to contact his lawyer about an appeal during the ten-day period, his lawyer must make a reasonable effort to reach the client before the time for filing a notice of appeal expires." Id.

"[W]hen counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." Flores-Ortega, 528 U.S. at 484. But the defendant need not show that he would have succeeded on appeal. Guerra, 94 F.3d at 994.

**B.    Although still counsel of record, Mr. Tenuto's attorney dismissed ideas of appealing and suggested Mr. Tenuto hire separate counsel for an appeal.**

In this case, the district court sentenced Mr. Tenuto on May 2, 2007. The district court imposed a sentence that Mr. Tenuto did not expect and that was not what his attorney had suggested was going to be the sentence. Vincent Tenuto Affidavit at ¶¶ 3-5; Civ.Doc.7, Affidavit of Pasquale V. Tenuto ("Pat Tenuto Affidavit") at ¶ 3.

As a result of that difference, Mr. Tenuto and his family were surprised and concerned. After the sentencing hearing, Mr. Tenuto spoke to his family about how he wanted to appeal. Vincent Tenuto Affidavit at ¶ 6. Mr. Tenuto's father Pasquale "Pat" Tenuto knew what to do. He approached defense counsel after the sentencing hearing and asked what had gone wrong—Why had the district court not imposed probation as had been expected? Pat Tenuto Affidavit at ¶¶ 4, 5.

In light of the difference between what had been expected and the sentence imposed, and because the attorney had made some good-sounding arguments that had not worked, Pat Tenuto asked the attorney about appealing   Pat Tenuto Affidavit at ¶ 5. The attorney was not interested in speaking with Pat Tenuto about appealing. Id. Pat Tenuto wanted to talk more about appealing because the attorney had been confident about winning arguments and getting probation for his son. Id. But the attorney quickly took Mr. Tenuto to the clerk's office to pay a fee and then left. Id.

Mr. Tenuto was out on bond after sentencing. Again, because of the sentence was not was expected, Mr. Tenuto called the attorney. Vincent Tenuto Affidavit at ¶ 7. Mr. Tentuo spoke to the attorney "and asked him directly about appealing." Id. Mr. Tenuto "specifically

12

mentioned appealing the increase that the government asked for and received," that the attorney had fought against at the sentencing hearing. Id. The attorney responded that appealing "would be a waste of time." Id. Although Mr. Tenuto pressed "for information about what an appeal could do or what it would be about," the attorney "was not interested in talking about appealing." Id. The attorney suggested that appealing would result in Mr. Tenuto getting an even higher sentence. Id.

Eight days after the sentencing hearing, on May 10, 2007, the attorney wrote a letter to Mr. Tenuto. Civ.Doc. 3, John D. Donlevy Letter of May 10, 2007, at 4-5. In the letter, the attorney explained that he saw "no solid grounds for an appeal." Id. at 5. Although the attorney remained counsel of record and had not been permitted to withdraw, he suggested that Mr. Tenuto "consult with another counsel on the appeal issue." Id. And although the letter was being sent out on May 10, 2007 and was not likely to reach Mr. Tenuto until the next day or two, the attorney noted that the "appeal must be filed no later than May 14, 2007." Id.

The attorney did not specifically advise Mr. Tenuto all that needed to be filed was a one-page notice of appeal. Instead, the language of the letter was that an "appeal" had to be filed by May 14, 2007. To a non-attorney, that language could create the impression that a lengthy, complicated document needed to be filed.

But even if Mr. Tenuto knew what needed to be filed, the attorney's letter of May 10, 2007 and the advice at that time to get another attorney gave Mr. Tenuto in his family little time to hire a new attorney. Much more importantly, the judgment had been filed, and the Seventh Circuit had not permitted the attorney to withdraw. Thus, the attorney remained counsel of record. See Flowers, 789 F.2d at 570; Seventh Circuit Rule 51(a).

Far from being a case in which a defendant "makes no real effort to inform counsel is not entitled to relief," Mr. Tenuto "made reasonable efforts to contact his lawyer" and then made clear his interest in appealing. See Herrera Corral, 498 F.3d at 474. Although it is true that Mr. Tenuto did not direct or demand an appeal, the attorney knew full well from speaking to Mr. Tenuto and his father that Mr. Tenuto wanted to appeal. And while the attorney believed that an appeal might not succeed, Mr. Tenuto did not consent to a lack of an appeal. See Chance, 103 F.3d 128.

Because Mr. Tenuto make clear his desire to appeal, and because his attorney had not been relieved of duty but pushed the task of appealing or getting another attorney to appeal back upon Mr. Tenuto, Mr. Tenuto was completely deprived of counsel, and counsel was prejudicially ineffective. See Flores-Ortega, 528 U.S. at 476-77; Strickland, 466 U.S. at 688; Herrera Corral, 498 F.3d at 474; Flowers, 789 F.2d at 570, 570 n.1. This is abandonment, and abandonment is a per se violation of the Sixth Amendment. Castellanos, 26 F.3d at 718.

For these reasons, Mr. Tenuto asks that this court enter an amended judgment to allow Mr. Tenuto ten days to file a notice of appeal. That is the appropriate remedy for this circumstance. See Peak, 992 F.2d at 40, 42 (remanding with instructions to vacate criminal judgment and enter new judgment from which defendant could take direct appeal). See Smith v. Farley, 59 F.3d 659, 665 (7th Cir. 1995) ("The remedy for ineffective assistance of counsel is a fresh appeal with competent counsel.").

### IV.   Mr. Tenuto Asks the District Court for an Evidentiary Hearing Concerning Reinstatement of His Appellate Rights.

Mr. Tenuto submits that an evidentiary hearing is appropriate in this matter. In order to be granted an evidentiary hearing, a habeas corpus petition must allege sufficient facts which, if true, would support the conclusion of law advanced. Townsend v. Sain, 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770, 785 (1963); Bruce v. Duckworth, 659 F.2d 776 (7th Cir. 1981). Title 28 U.S.C. § 2255 provides the standard for determining whether to grant an evidentiary hearing. The statute requires a hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; Menzer v. United States, 200 F.3d 1000, 1006 (7th Cir. 2000).

In the present case, Mr. Tenuto has set forth facts in his motion that, if demonstrated to be true, certainly entitle him to relief. Thus, he asks for an evidentiary hearing at which time he and others would testify concerning conversations with his former counsel concerning his desire to appeal.

### V.   Conclusion

Mr. Tenuto was completely deprived of his right to assistance of counsel on appeal. Although he and his father both approached trial counsel with inquiries about appealing and making clear Mr. Tenuto's interest in appealing, counsel dismissed the idea, stating that an appeal would be fruitless. And when it was no longer reasonable to expect that Mr. Tenuto and his family had time to retain new counsel, counsel wrote a letter advising Mr. Tenuto to hire other counsel for the appeal. Thus, this is not a case of an appellate attorney failed to make a particular argument on appeal—in this case, Mr. Tenuto had no appellate counsel. For the above

stated reasons, Mr. Tenuto asks the district court to grant his motion under 28 U.S.C. § 2255 and enter an amended judgment order from which Mr. Tenuto may timely appeal.

Respectfully submitted,

Robinson & Brandt, P.S.C.

Dated: 27 May 2008　　　　　　　　　　　　/s/　Jeffrey M. Brandt
　　　　　　　　　　　　　　　　　　　　　　　Jeffrey M. Brandt, Esq.
　　　　　　　　　　　　　　　　　　　　　　　N.D. Ill. Bar No. 90785912
　　　　　　　　　　　　　　　　　　　　　　　629 Main Street
　　　　　　　　　　　　　　　　　　　　　　　Suite B
　　　　　　　　　　　　　　　　　　　　　　　Covington, KY 41011
　　　　　　　　　　　　　　　　　　　　　　　(859) 581-7777 voice
　　　　　　　　　　　　　　　　　　　　　　　(859) 581-5777 facsimile

## CERTIFICATE OF SERVICE

I certify that on the date printed below I electronically filed with the clerk's Electronic Case Filing system a true copy of the foregoing memorandum of law in support of Vincent John Tenuto's motion under 28 U.S.C. § 2255, which should cause the document to be electronically served upon April Perry, Esq., United States Attorney's Office, 219 South Dearborn Street, Suite 500, Chicago, Illinois 60604.

Dated: 27 May 2008　　　　　　　　　　　　/s/　Jeffrey M. Brandt